IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE KELLY LAW FIRM, P.C., a        §
Texas Professional Corporation;    §
A. DANIEL WOSKA & ASSOCIATES,      §
P.C., an Oklahoma Professional     §
Corporation; and THE LAW           §
OFFICES OF ROBERT H. WEISS,        §
PLLC, a District of Columbia       §
Professional Limited Liability     §
Company,                           §
                                   §
            Plaintiffs,            §        CIVIL ACTION NO. H-09-3352
                                   §
v.                                 §
                                   §
AN ATTORNEY FOR YOU,               §
CALLIOPE MEDIA, L.P., and          §
CALLIOPE MEDIA, INC.,              §
                                   §
            Defendants.            §

### MEMORANDUM OPINION AND ORDER

Plaintiffs, The Kelly Law Firm, P.C. ("Kelly"), A. Daniel Woska & Associates, P.C. ("Woska"), and The Law Offices of Robert H. Weiss, PLLC ("Weiss"), filed this action alleging fraud, breach of contract, unjust enrichment, and violation of the Texas Deceptive Trade Practices Act ("TDTPA") against defendants, An Attorney for You, Calliope Media, L.P., and Calliope Media, Inc. (collectively, "Calliope"), regarding internet marketing services the defendants provided to the plaintiffs. Pending before the court is Defendants' Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California (Docket Entry No. 9). Defendants argue that this action should be dismissed for

lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failure to state a claim under Rule 12(b)(6).  For the reasons explained below, the court will deny the defendants' motion, but will order the plaintiffs to replead their fraud allegations.

## I.  Factual and Procedural Background

This action concerns a dispute over Internet marketing services that the defendants provided to the plaintiffs, a group of plaintiff's law firms that contracted with the defendants to provide leads on clients for mesothelioma and birth-injury lawsuits.  Plaintiff Kelly is a Texas Professional Corporation with its principal place of business in Houston, Texas.[1]  Plaintiff Woska is an Oklahoma Professional Corporation with its principal place of business in Oklahoma City, Oklahoma.[2]  Plaintiff Weiss is a District of Columbia law firm incorporated pursuant to the laws of the District of Columbia, with branch offices in Jericho, New York, and Atlanta, Georgia.[3]  Defendant An Attorney for You is not a legal entity, but is a name used by Calliope Media, Inc., a California Corporation doing business in La Jolla, California.[4]

---

[1]Plaintiffs' Original Petition, Docket Entry No. 2, ¶ 2.

[2]Id. ¶ 3.

[3]Id. ¶ 4.

[4]Defendants An Attorney for You; Calliope Media, L.P.; and Calliope Media, Inc.'s Notice of Removal of Action Pursuant to 28 USC § 1441(b), Docket Entry No. 1, ¶¶ 8-9.

Defendant Calliope Media, L.P., is an inactive California limited partnership that merged into Calliope Media, Inc., prior to the filing of this action.[5]  Since Calliope Media, Inc., is the only active legal entity that is a defendant in this action, the court will refer to the three named defendants as "Calliope."

The parties disagree about several aspects of the factual background to this action.  What is not in dispute is that in mid-2007 and early 2008 Kelly and Calliope entered into two agreements ("the personal injury agreements") under which Kelly paid Calliope for referrals of potential personal injury plaintiffs from its website, anattorneyforyou.com.[6]  Kelly and Calliope entered into two additional agreements ("the mesothelioma and birth injury agreements") in July of 2008 under which Calliope agreed to refer potential mesothelioma and birth injury plaintiffs from its websites to Kelly, Weiss, and Woska in exchange for payment.[7]  It is not disputed that the contracts were negotiated and executed

---

[5]Id. ¶ 10.

[6]E-mail from Simone Vazquez, July 3, 2007, Exhibit A attached to Declaration of Todd Kelly, attached to Plaintiffs' Opposition to Defendants' Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California ("Plaintiffs' Opposition"), Docket Entry No. 12, p. 1; E-mail from Simone Vazquez, January 21, 2008, Exhibit B attached to Declaration of Todd Kelly, attached to Plaintiffs' Opposition, Docket Entry No. 12, p. 2.

[7]Invoice #TX062608-01, Exhibit 2 to Plaintiffs' Original Petition, Docket Entry No. 2; Invoice #TX073108-02, Exhibit 3 to Plaintiffs' Original Petition, Docket Entry No. 2.

between Calliope and Kelly.[8]  At some point Kelly brought in the Woska and Weiss firms to share in the costs and the administrative requirements of the marketing campaigns.  The parties dispute precisely when Woska and Weiss became involved in the transaction and what roles they played in it.  The parties also disagree as to who initiated the contract negotiations, where the work under the contract was performed, and whether the leads provided by Calliope fulfilled Calliope's contractual obligations.

## A.   The Plaintiffs' Account

The plaintiffs have provided a sworn declaration from Todd Kelly, the owner of The Kelly Law Firm, describing the events leading up to the litigation:[9]

> 2.   Prior to Plaintiffs and Defendants entering into the Mesothelioma and Birth Injury Agreements at issue herein, the Defendants first targeted the Kelly Law Firm . . . in or about late June or early July 2007, an office-mate of mine was directly sent an email at their shared offices in Houston, Texas which appeared to be from a prospective client in need of legal services and caused me to respond thinking that I was contacting someone looking for an attorney.  To my surprise, I was informed by one of Defendants' representatives, that they (Calliope Media) in fact had sent the e-mail message.  I was then informed of Defendants' identity and of the fact that they could provide similar such leads and referrals to my law firm from the visitors to its website, *anattorneyforyou.com*,

---

[8]Id.; see also Declaration of Nathaniel Robinson, attached to Defendants' Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California ("Defendants' Motion"), Docket Entry No. 9, ¶ 6 ("In this case, the contract was between the California Corporation [Calliope] and the Kelly Firm.").

[9]Declaration of Todd Kelly, attached to Plaintiffs' Opposition, Docket Entry No. 12.

-4-

in the areas of law that are of specific interest to my firm. After considering the possibilities of the types of services Defendants claimed it could provide, Defendants and I negotiated and then entered into two contracts, which are similar to the Agreements at issue herein, whereby Defendants would provide their services to our firm in Texas. . . I never left Texas for any purpose related to these contracts.

3.   On or about July 2008, Defendants once again approached Kelly, and offered its lead referral service to the firm. Plaintiff Kelly and Defendants exclusively negotiated the terms and then Kelly contracted solely with Defendants on two additional Agreements, which are the subject of this current dispute, whereby Defendants overstated and/or consciously disregarded their capabilities to generate Qualified Mesothelioma and Birth Injury Leads. Defendants promised to provide, on an 'exclusive' basis, 60-120 Qualified and Targeted Mesothelioma Leads, which Defendants guaranteed would result in a minimum of 10 Cases with a minimum settlement value of $1,000,000 (One Million Dollars), within 6 months. Defendants further promised to deliver 3800-5100 Qualified and Targeted Birth Injury Leads. . .

4.   In my later discussions with Thomas Arthur, the co-founder and CEO of Defendant Calliope Media, Inc. and Simone Vasquez, Senior Business Advisor for Defendant Calliope Media, Inc., I informed them that A. Daniel Woska & Associates, P.C., (hereinafter "WOSKA"), The Estefan Firm (hereinafter "ESTEFAN"), and The Law Offices of Robert H. Weiss, PLLC, (hereafter "WEISS") intended to join this venture, and that along with me, Plaintiffs Woska, Estefan, and Weiss would provide the necessary payments to Defendants for both Agreements. However, as the sole contracting party, these leads were sent only to me at my Houston, Texas office for a period of approximately six weeks before Plaintiff Woska of Oklahoma and Weiss of New York, having joined this venture, began to receive these leads jointly with The Kelly Law Firm, at each of their firms' offices. The leads provided by Defendants were never exclusively sent to New York as claimed by Defendants.

5.   While Plaintiff Weiss had the infrastructure in New York and operated the "call center" and periodically reported to Defendants about the quality of the leads that were being referred, Plaintiff Weiss and its offices in Jericho, NY was never selected as the Joint Venture

Management/Operations Center, as claimed by Defend-
ants. . . . Every lead that was referred by Defendants
pursuant to the Mesothelioma and Birth Injury Agreements
were at all times purposefully directed by email, through
use of its *attorneyforyou.com* website, to my offices in
Texas, as well as the Weiss and Woska offices. My firm
(along with Woska and Weiss) reviewed all leads received
from Defendants and was prepared to pursue any actionable
claim on behalf of those referred leads . . .[10]

In support of Kelly's Declaration, plaintiffs provide a
July 3, 2007, e-mail from Calliope's Simone Vazquez containing the
initial personal injury agreement between Kelly and Calliope.[11] The
agreement contains an invoice stating, "Membership Listings
Purchased . . . Personal Injury (Subcategories include: Medical
Malpractice, Nursing Home Negligence, Birth Injury, Brain Injury,
Vehicle Accidents, Aviation, Toxic Mold, Transportation, Lasik,
Construction Law and Admiralty Law): Texas."[12] Plaintiffs also
provide a January 21, 2008, e-mail from Vazquez containing the
second personal injury agreement stating, "Calliope Media
guarantees that An Attorney for You directory will provide e-mail
leads for the duration of the contract and that Todd Kelly will be
receiving e-mail referrals for Personal Injury for the entire state
of Texas."[13]

---

[10]*Id.*

[11]E-mail from Simone Vazquez, July 3, 2007, Exhibit A attached
to Declaration of Todd Kelly, attached to Plaintiffs' Opposition,
Docket Entry No. 12, p. 1.

[12]*Id.* at 3.

[13]E-mail from Simone Vazquez, January 21, 2008, Exhibit B
attached to Declaration of Todd Kelly, attached to Plaintiffs'
Opposition, Docket Entry No. 12, p. 2.

In addition to the Declaration, plaintiffs have provided a screenshot of the Internet page for anattorneyforyou.com with the title "Texas, General Practice Attorneys."[14]  The page provides an information entry form for prospective legal clients.  It states, "An Attorney For You can assist with locating and contacting an attorney, should legal representation be necessary, by providing free access to lawyers and attorneys in the state of Texas."[15]  The page also states, "The An Attorney for You Legal Network contains lawyers, attorneys, and law firms that serve the following counties in Texas," and lists all 254 Texas counties.[16]

**B.   Calliope's Account**

Calliope disputes the plaintiffs' account of who initiated the contract negotiations and whether Calliope's efforts were directed at the state of Texas.  Calliope has provided a declaration by Thomas Arthur, an officer and director of Calliope.[17]  Arthur's declaration states:

> 3.   The Kelly Law Firm of Texas approached Calliope Media, Inc., a California corporation seeking to have the California Corporation create campaigns for Mesothelioma and for Birth Injury.  In our discussions/negotiations, Todd Kelly . . . stated that he had "partners" in the

---

[14]Anattorneyforyou.com screenshot, Exhibit 1 attached to Plaintiffs' Opposition, Docket Entry No. 12.

[15]Id.

[16]Id.

[17]Declaration of Thomas Arthur, attached to Defendants' Motion, Docket Entry No. 9.

proposed campaign, namely Daniel Woska of Oklahoma, and Robert Weiss of New York, the District of Columbia, and Georgia.  I was informed that all of those offices would be 'joint venturing' on the proposed campaign through Calliope, Inc.

. . .

5.  It was expressly agreed and instructed by the Kelly/Woska/Weiss Joint Venture that the Joint Venture Operations Center would be located at Mr. Weiss' offices in Jericho, New York.  That decision was made by the Joint Venturers because Mr. Weiss was stated to have the experience, staff and resources to properly operate the Joint Venture Operations Center.  Mr. Weiss had the main body of his staff at Jericho, New York, but also utilized staff from his other offices in the District of Columbia and in Atlanta, Georgia, as needed.

. . .

7.  Calliope was clearly instructed that business and communications for the campaigns would be transacted with the New York Joint Venture Operations Center.  Calliope did not direct its business activities to Texas. Calliope has no offices in Texas, has no employees in Texas, has no representatives in Texas, has no property in Texas, and is not registered to do business in Texas. Calliope's contacts with Texas in this matter has been the entry of two contracts, wherein co-plaintiff Todd Kelly acted as point man/agent for a Joint Venture of law firms located in Oklahoma, Washington, District of Columbia, and New York.  The campaigns themselves were **not** purposefully directed to Texas residents, rather it was a national campaign that did not target residents, rather it was directed to two specific injury classes. The overwhelming number of leads were from outside of Texas, with leads being received and processed in California and then transmitted to the Joint Venture Operations Center in New York for contact, review and retention of services for the Joint Venture.  Further, it was expressly intended and instructed by the Plaintiffs that all transactions, business, reports and communications were to be between Calliope in California and the Kelly/Woska/Weiss Joint Venture Operations Center in New York. . . .[18]

---

[18]<u>Id.</u>

Calliope has also provided a declaration by Nathaniel Robinson, an officer and director of Calliope, who echoes the statements in Arthur's Declaration that the Kelly Law Firm approached Calliope about initiating a mesothelioma and birth injury campaign, and that "[a]ll of the data as finalized in California was instructed to be sent to the Weiss Firm in Jericho, New York."[19]

Finally, defendants provide a declaration by Simone Vazquez, Calliope's Senior Business Advisor, stating:

> 4.   . . . The contracts in dispute flowed from and were a continuance of the original small personal injury agreement. . .  Mr. Kelly desired to increase his campaign participation, and contacted us in California regarding such expansion of the six month personal injury agreements.
>
> . . .
>
> 6.   In May 2008, Mr. Kelly contacted us to discuss a major expansion into Mesothelioma and birth injury.
>
> . . .
>
> 8.   In July 2008, Mr. Kelly informed Calliope that a Joint Venture had been set up, was being finalized, and that he was ready to go forward in the Mesothelioma and Birth Injury Campaigns. . . .
>
> . . .
>
> 10.  There is no questions [sic] that I was expressly directed by Mr. Kelly to have Calliope provide performance to Mr. Weiss' offices in New York . . .
>
> . . .

---

[19]Declaration of Nathaniel Robinson, attached to Defendants' Motion, Docket Entry No. 9, ¶¶ 6-8.

12.   Mr. Kelly references that he received information
from Calliope.  Mr. Kelly received copies of information,
as did Mr. Woska in Oklahoma.   However, as discussed
above,  Mr.  Kelly  admittedly  did  not  have  the
infrastructure to perform the work.   In point of fact,
Mr. Kelly, in one conversation, directly told me that he
didn't read most of those copies, that he left it to
Mr. Weiss to handle the operations matters, and that was
why Mr. Weiss was part of the group.[20]

## C.   Procedural Background

A   dispute   arose   between   the   parties   soon   after   the

mesothelioma and birth injury campaigns began because, according to

plaintiffs, the leads provided by Calliope did not meet plaintiffs'

expectations.   Plaintiffs allege that "none of the leads that were

forwarded by Defendants have resulted in an actionable case."[21]

Plaintiffs  filed  their  original  petition  against  defendants  in

Harris County District Court on September 9, 2009, alleging fraud,

breach of contract, unjust enrichment, and violation of the TDTPA.

(Docket Entry No. 2)   On October 9, 2009, defendants removed the

action  to  this  court  on  the  basis  of  diversity  jurisdiction.

(Docket Entry No. 1)   On October 29, 2009, defendants filed the

pending motion to dismiss or transfer the action.   (Docket Entry

No. 9)

---

[20]Reply Declaration of Simone Vazquez, attached to Defendants'
Reply Memorandum Re:  Defendants' Motion to Dismiss, or, in the
Alternative, to Transfer to the Southern District of California
("Defendants' Reply"), Docket Entry No. 21.

[21]Plaintiffs' Original Petition, Docket Entry No. 2, ¶ 20.

## II.  <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

Calliope argues that this action should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Plaintiffs respond that the defendants' contacts with Texas were sufficient to support the court's assertion of personal jurisdiction over them.

### A.  Standard of Review

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'"  <u>Quick Technologies, Inc. v. Sage Group PLC</u>, 313 F.3d 338, 343 (5th Cir. 2002), <u>cert. denied</u>, 124 S.Ct. 66 (2003) (quoting <u>Mink v. AAAA Development LLC</u>, 190 F.3d 333, 335 (5th Cir. 1999)).  "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  <u>Id.</u> (quoting <u>Wilson v. Belin</u>, 20 F.3d 644, 648 (5th Cir.), <u>cert. denied</u>, 115 S.Ct. 322 (1994)).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  <u>Id.</u> at 344

(quoting <u>Thompson v. Chrysler Motors Corp.</u>, 755 F.2d 1162, 1165 (5th Cir. 1985)).  The court must accept as true the uncontroverted allegations in the plaintiff's petition and must resolve any factual conflicts in favor of the plaintiff.  <u>Adams v. Unione Mediterranea Di Sicurta</u>, 364 F.3d 646, 650 (5th Cir. 2004). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e c]ourt." <u>Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.</u>, 9 F.3d 415, 418 (5th Cir. 1993).  However, the court is not obligated to credit conclusory allegations, even if uncontroverted.  <u>Panda Brandywine Corp. v. Potomac Elec. Power Co.</u>, 253 F.3d 865, 869 (5th Cir. 2001).

**B.   Applicable Law**

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" <u>International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement</u>, 66 S.Ct. 154, 158 (1945) (quoting <u>Milliken v. Meyer</u>, 61 S.Ct. 339, 343 (1940)).  Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable; and the burden of proof and persuasion shifts to the defendant

opposing jurisdiction to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S.Ct. 2174, 2185 (1985). Federal courts "sitting in diversity may assert personal jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the [F]ourteenth [A]mendment to the United States Constitution." Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008).

    1.   Texas Long-Arm Statute

    Texas courts may assert personal jurisdiction "over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees." See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007) (citing Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute authorizes service of process on nonresidents "[i]n an action arising from the nonresident's business in this state." TEX. CIV. PRAC. & REM. CODE § 17.043. The statute provides, in part:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state. <u>Id.</u> at § 17.042.

The Texas Supreme Court has stated that the long-arm statute's "broad doing-business language allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" <u>Moki Mac</u>, 221 S.W.3d at 575 (quoting <u>Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.</u>, 815 S.W.2d 223, 226 (Tex. 1991)).

2. <u>Minimum Contacts Analysis</u>

"There are two types of 'minimum contacts:' those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." <u>Lewis v. Fresne</u>, 252 F.3d 352, 358 (5th Cir. 2001).

(a)  Specific Jurisdiction

A court may exercise specific jurisdiction over a nonresident defendant if the lawsuit arises from or relates to the defendant's contact with the forum state. <u>ICEE Distributors, Inc. v. J&J Snack Foods Corp.</u>, 325 F.3d 586, 591 (5th Cir. 2003). Specific jurisdiction exists where a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." <u>Burger King</u>, 105 S.Ct. at 2185. The Texas Supreme Court has recently explained that there are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are

-14-

relevant, not the unilateral activity of another party or a third person.  Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated.  Finally, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.  In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there.  Moki Mac, 221 S.W.3d at 575 (citing Burger King, 105 S.Ct. at 2182).

Merely contracting with a resident of the forum state is not sufficient in itself to support the exercise of jurisdiction over the defendant.  See ICEE Distributors, 325 F.3d at 591.  The Fifth Circuit has looked to other factors surrounding the contract and its formation including, primarily, the place of performance and/or intended performance and the place of subsequent breach.  See Jones v. Petty-Ray Geophysical Geosource, Inc., 954 F.2d 1061, 1068 (5th Cir. 1992) ("In contract cases, this Court has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts.").

(b)  General Jurisdiction

General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic.  Johnston, 523 F.3d at 609 (citing Helicopteros

-15-

Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. 1868, 1872-74
(1984)).  "The 'continuous and systematic contacts test is a
difficult one to meet, requiring extensive contacts between a
defendant and a forum.'"  Id. (quoting Submersible Systems, Inc. v.
Perforadora Central, S.A., 249 F.3d 413, 419 (5th Cir. 2001)).

"General jurisdiction can be assessed by evaluating contacts
of the defendant with the forum over a reasonable number of years,
up to the date the suit was filed."  Access Telecom, Inc. v. MCI
Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999), cert.
denied, 121 S.Ct. at 275, 292 (2000).  The court views all the
defendant's contacts in toto.  Id.  "[V]ague and overgeneralized
assertions that give no indication as to the extent, duration, or
frequency of contacts are insufficient to support general
jurisdiction."  Johnston, 523 F.3d at 610 (citing Gardemal v.
Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

(c)  Minimum Contacts and Internet Services

Internet-based businesses can present challenges to the
traditional minimum-contacts analysis because such businesses can
conduct business in a state without ever having a physical presence
there.  In Mink v. AAAA Dev. LLC the Fifth Circuit established a
"sliding scale" to evaluate whether a nonresident defendant's
Internet contacts are sufficient to subject it to the jurisdiction
of the forum state.  Mink, 190 F.3d at 336 (citing Zippo Mfg. Co.
v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D. Pa. 1997));

see also Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002) (applying the Mink standard to a website selling journal subscriptions and advertising).  At one end of the scale is "a passive website that does nothing more than advertise on the Internet," which does not support a finding of minimum contacts. Mink, 190 F.3d at 336.  At the other end of the scale are websites through which "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet. . . .'" Id., citing Zippo, 952 F.Supp. at 1124. Defendants that own or maintain such websites will be subject to the forum state's jurisdiction.  Id.  In the middle of the spectrum are instances where a defendant has allowed users "to exchange information with a host computer."  Id. at 336.  Whether the contacts generated by sites in this middle ground are sufficient to support a finding of minimum contacts "is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the Website." Id., citing Zippo, 952 F.Supp. at 1124.

## C.  Analysis

Calliope has moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over Calliope because it has no physical presence in Texas and because its performance under the mesothelioma and birth

injury campaigns was directed primarily at New York.  Plaintiffs
argue that Calliope is subject to both general and specific
personal jurisdiction in Texas because it has actively and
continuously sought out business in Texas, and because this action
arises from Calliope's business activities in Texas.  To defeat
defendants' motion to dismiss, plaintiffs must present evidence
establishing a prima facie case that personal jurisdiction is
proper.  Quick Technologies, 313 F.3d at 343.  Where the evidence
presented by the parties is in conflict, the court will resolve the
conflict in the plaintiffs' favor.  Adams, 364 F.3d at 650.

1.   The Texas Long-Arm Statute

The Texas long-arm statute authorizes service of process on
nonresidents "[i]n an action arising from the nonresident's
business in this state."  TEX. CIV. PRAC. & REM. CODE § 17.043.  The
statute states that a defendant conducts business in Texas if it
"(1) contracts by mail or otherwise with a Texas resident and
either party is to perform the contract in whole or in part in this
state; (2) commits a tort in whole or in part in this state."  Id.
at § 17.042.  Plaintiffs contend that defendants have conducted
business in Texas under both of these definitions.

(a)  Did Calliope Contract to Perform in Texas?

The record establishes that Calliope contracted with Kelly, a
Texas party, in both the personal injury agreements and the

-18-

mesothelioma and birth injury agreements.[22]   Calliope does not
dispute that it contracted with a Texas party; what it disputes is
that the contracts were to be performed in whole or in part in this
state.  The court concludes that they were.

Plaintiffs have provided a screen shot of the website
anattorneyforyou.com that targets potential legal clients for
"attorneys in the state of Texas," and states that the attorneys in
the "An Attorney For You Legal Network" serve all 254 counties in
the state of Texas.[23]   Kelly's declaration states that Calliope
sought to recruit Texas lawyers to subscribe to its listing
service.[24]   The personal injury agreement reflects that Calliope
contracted with Kelly to provide e-mails from potential personal
injury plaintiffs in exchange for a fee.[25]   Since Calliope's duties
under this contract required it to collect information from
potential plaintiffs in Texas and to send that information to an

---

[22]E-mail from Simone Vazquez, July 3, 2007, Exhibit A attached
to Declaration of Todd Kelly, attached to Plaintiffs' Opposition,
Docket Entry No. 12, p. 1; E-mail from Simone Vazquez, January 21,
2008, Exhibit B attached to Declaration of Todd Kelly, attached to
Plaintiffs' Opposition, Docket Entry No. 12, p. 2; Invoice
#TX062608-01, Exhibit 2 to Plaintiffs' Original Petition, Docket
Entry No. 2; Invoice #TX073108-02, Exhibit 3 to Plaintiffs'
Original Petition, Docket Entry No. 2.

[23]Anattorneyforyou.com screenshot, Exhibit 1 attached to
Plaintiffs' Opposition, Docket Entry No. 12.

[24]Declaration of Todd Kelly, attached to Plaintiffs'
Opposition, Docket Entry No. 12, ¶ 2.

[25]E-mail from Simone Vazquez, July 3, 2007, Exhibit A attached
to Declaration of Todd Kelly, attached to Plaintiffs' Opposition,
Docket Entry No. 12.

attorney in Texas, performance under the contract took place, at least in part, in Texas.

The mesothelioma and birth injury agreements likewise required performance, at least in part, in Texas.  Calliope argues that because the leads from these campaigns were processed in Weiss's New York office that the contract was not performed in Texas.  This argument confuses the duties that Calliope owed to the plaintiffs under the mesothelioma and birth injury agreements with the duties that the plaintiffs owed to each other.  Regardless of where the plaintiffs chose to process the leads, Calliope's performance under the agreements involved sending the leads to all three plaintiffs, including Kelly's office in Texas.  The text of the mesothelioma and birth injury agreements make clear that Calliope's duties are owed to Kelly;[26] the agreements do not mention Woska or Weiss, and Calliope has produced no legal agreements signed between Calliope and Weiss.  Kelly's declaration states that, "Every lead that was referred by Defendants pursuant to the Mesothelioma and Birth Injury Agreements were at all times purposefully directed by email, through use of its *attorneyforyou.com* website, to my offices in Texas, as well as the Weiss and Woska offices."[27]

---

[26]Invoice #TX062608-01, Exhibit 2 to Plaintiffs' Original Petition, Docket Entry No. 2; Invoice #TX073108-02, Exhibit 3 to Plaintiffs' Original Petition, Docket Entry No. 2.

[27]Declaration of Todd Kelly, attached to Plaintiffs' Opposition, Docket Entry No. 12, ¶ 5.

Although Calliope has produced three declarations stating that defendants were instructed to send all leads to Weiss's office in New York, none of the declarations contend that the leads were not also sent to Kelly's office in Texas. Vazquez's declaration is not to the contrary; it states that "Mr. Kelly received copies of information, as did Mr. Woska in Oklahoma."[28] Since the information in question involves digital files that were transmitted electronically, the distinction between a "copy" and the putative "original" received by Weiss is immaterial -- both parties received the same information. What the plaintiffs chose to do with the information once they received it is not relevant to the question of what Calliope's obligations were under the contract; plaintiffs could have deleted every referral e-mail the second they received it without affecting Calliope's obligations. Because Calliope was obligated to send the files to Kelly in Texas and it did so, its performance under the contract took place, at least in part, in Texas. That its performance also took place in Oklahoma and New York does not alter this analysis.

The court concludes that Calliope contracted with a Texas resident and that it performed the contract, at least in part, in Texas. Therefore, the Texas long-arm statute is met under TEX. CIV. PRAC. & REM. CODE § 17.042(1).

---

[28]Reply Declaration of Simone Vazquez, attached to Defendants' Reply, Docket Entry No. 21.

(b)  Did Calliope Commit a Tort in Texas?

Plaintiffs also argue that the Texas long-arm statute is satisfied because Calliope committed a tort, namely fraud, at least in part in Texas.  The court will not consider this argument because, as discussed below in Part V, the plaintiffs' allegation of fraud has been pleaded inadequately.  In any event, because the court has already concluded that the first prong of Tex. Civ. Prac. & Rem. Code § 17.042 has been met, it is not necessary to determine whether the second prong is also met.

2.  <u>Minimum Contacts Analysis</u>

In order for the court to assert personal jurisdiction over Calliope, plaintiffs must establish not only that the Texas long-arm statute applies but that the minimum-contacts analysis required for due process is met.  <u>Johnston</u>, 523 F.3d at 609.  Plaintiffs argue that Calliope is subject to both specific and general jurisdiction in Texas.

(a)  Specific Jurisdiction

To establish specific jurisdiction plaintiffs must show both that Calliope purposefully sought to avail itself of the privileges of conducting business in Texas and that this action arose from Calliope's contacts with Texas.  <u>See ICEE Distributors</u>, 325 F.3d at 591.  Calliope argues that because it has no physical presence in Texas and because the processing of leads under the mesothelioma

-22-

and birth injury campaigns took place in New York, Calliope lacks sufficient contacts with Texas to support personal jurisdiction. The court disagrees.

Many of the facts relevant to the discussion above of the Texas long-arm statute are likewise relevant to whether Calliope purposefully availed itself of the privilege of doing business in Texas. Plaintiffs have established that Calliope runs a website that specifically targets plaintiffs in Texas and gathers information from them.[29] Plaintiffs have also established that Calliope enters into contractual relationships with Texas attorneys who pay Calliope for referrals from the website.[30] In other words, Calliope runs a lawyer referral business in Texas. This business is analogous to that of a telephone directory publisher that collects fees from lawyers in exchange for placing ads in its directory. No one would question whether such a publisher is subject to personal jurisdiction in the forum in which its directories are distributed. Calliope's business, however, is actually more active than that of a telephone directory publisher, in that it actively collects information from potential legal clients and sends the information to lawyers who have paid for the

---

[29]Anattorneyforyou.com screen shot, Exhibit 1 attached to Plaintiff's Opposition, Docket Entry No. 12.

[30]E-mail from Simone Vazquez, July 3, 2007, Exhibit A attached to Declaration of Todd Kelly, attached to Plaintiffs' Opposition, Docket Entry No. 12, p. 1; E-mail from Simone Vazquez, January 21, 2008, Exhibit B attached to Declaration of Todd Kelly, attached to Plaintiffs' Opposition, Docket Entry No. 12, p. 2.

service.  Under this analysis, it seems clear that Calliope is purposefully availing itself of business opportunities in Texas.

In order for the court to assert specific personal jurisdiction, plaintiffs must also establish that this action arises from Calliope's contacts with Texas.  ICEE Distributors, 325 F.3d at 591.  The court concludes that it does.  Vazquez's Declaration states that "[t]he contracts in dispute flowed from and were a continuance of the original small personal injury agreement."[31]  Since the personal injury agreements demonstrate adequate purposeful availment, and since Calliope concedes that the "contracts in dispute flowed from and were a continuance" of those original agreements, the court concludes that this lawsuit arises from Calliope's contacts with Texas.

Analyzing Calliope's contacts under the personal jurisdiction standard for websites articulated by the Fifth Circuit in Mink leads to the same result.  If Calliope's activities were evaluated solely on the basis of Internet interactions of potential clients with anattorneyforyou.com, it would probably fall into the middle category in which the defendant allows users "to exchange information with a host computer."  Mink, 190 F.3d at 336.  This activity alone is probably sufficient to support minimum contacts, since "the level of interactivity and commercial nature of the exchange of information that occurs on the Website" are

---

[31]Reply Declaration of Simone Vazquez, attached to Defendants' Reply, Docket Entry No. 21, ¶ 4.

substantial.  Id.  When Calliope's use of the information derived
from the website is considered -- forwarding the information
entered by potential clients to lawyers who have contracted to be
a part of Calliope's referral service -- Calliope's activities fall
into Mink's third category, in which "a defendant clearly does
business over the Internet by entering into contracts with
residents of other states which 'involve the knowing and repeated
transmission of computer files over the Internet. . . .'"  Id.
Calliope is therefore subject to personal jurisdiction in Texas
under the Mink standard.

        (b) General Jurisdiction

    Plaintiffs also argue that Calliope's contacts with Texas are
sufficiently substantial, continuous, and systematic to support
general jurisdiction.  While one screen shot, two contracts, and a
declaration are sufficient in the court's view to establish that
Calliope is doing business in Texas, this evidence does not
establish how long Calliope has been targeting potential legal
clients and lawyers in Texas, nor does it establish how many
potential legal clients and lawyers in total have taken part in the
referral network.[32]  Without such information, the court cannot

_____

        [32]Plaintiffs allege in their opposition brief that
"approximately 111 (One Hundred and Eleven) Texas citizens utilized
Defendants' website in order to gain access to a Texas attorney by
being forwarded by Defendants to Plantiff Kelly," but provide no
record evidence in support of this assertion.  Plaintiffs'
Opposition, Docket Entry No. 12, p. 16.

determine whether Calliope's business in Texas is sufficiently substantial, continuous, and systematic to support general jurisdiction.

**D.   Conclusion**

The court concludes that plaintiffs have established that Calliope is subject to specific personal jurisdiction in Texas. Therefore, the court will deny Calliope's 12(b)(2) motion to dismiss.

### III.   <u>Calliope's Motion to Dismiss for Improper Venue</u>

Calliope also argues that this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.  The parties provide little argument on this motion aside from the arguments advanced concerning personal jurisdiction or transfer of venue.

**A.   Applicable Law**

"Once a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue." <u>McCaskey v. Continental Airlines, Inc.</u>, 133 F.Supp.2d 514, 523 (S.D. Tex. 2001).  In deciding whether venue is proper the court must accept facts alleged in the well-pleaded complaint as true. <u>Id.</u>  The court's subject matter jurisdiction in this matter is based solely upon diversity of citizenship.  In such an action, 28 U.S.C. § 1391(a) provides that venue is proper in:  "(1) a judicial district where any defendant resides, if all defendants reside in

the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The venue statute also states, "(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."   28 U.S.C. § 1391(c).

**B.   Analysis**

The court concludes that because the dispute concerns a contract that was negotiated by Kelly in Houston, and arises from a business relationship in which Calliope provided referrals of potential Texas clients to Kelly in Houston, the Southern District of Texas is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Venue is thus proper under 28 U.S.C. § 1391(a)(2).   Furthermore, since the court has already concluded that Calliope is subject to personal jurisdiction in Texas, and because 28 U.S.C. § 1391(c) provides that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," the court concludes that venue is also proper under 28 U.S.C. § 1391(a)(1).

**IV.   <u>Motion to Transfer</u>**

Calliope has moved in the alternative for this action to be transferred to the United States District Court for the Southern

District of California pursuant to 28 U.S.C. § 1404(a).  Plaintiffs oppose the motion.

## A.    Applicable Law

Section 1404(a) allows district courts to transfer an action to another proper venue "for the convenience of parties and witnesses" if such a transfer will be "in the interest of justice." 28 U.S.C. § 1404(a).  The preliminary question under § 1404(a) is whether a civil action might have been brought in the proposed venue.  In re Volkswagen of America, Inc., 545 F.3d 304, 312 (5th Cir. 2008).  Whether a venue is proper is determined under 28 U.S.C. § 1391 when no special, restrictive venue statute applies. Id.  If venue in the proposed district would have been proper, the court must then determine "whether a § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice."  Id. at 315.  The Fifth Circuit has noted that because a plaintiff's choice of forum should bear some weight in a transfer analysis, the movant must show "good cause" in order to obtain a transfer.  Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 56 (5th Cir. 1963).  To show "good cause" the movant must show that the desired venue is "clearly more convenient" than the venue chosen by the plaintiff:

> [W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.  When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the

-28-

district court should therefore grant the transfer.
<u>In re Volkswagen</u>, 545 F.3d at 315.

The Fifth Circuit has provided a non-exclusive list of private and public interest factors, none of which are given dispositive weight, for courts to use in determining whether a given venue is "clearly more convenient" than another. <u>Id.</u>  The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. <u>Id.</u>  The public interest factors include:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws and of the application of foreign law. <u>Id.</u>

**B.    Propriety of Venue**

The preliminary question in considering this transfer motion is whether the action could properly have been brought in the Southern District of California. <u>See In re Volkswagen</u>, 545 F.3d at 312.  In actions in which the court's subject matter jurisdiction is based solely on diversity, 28 U.S.C. § 1391(a) provides that venue is proper in:  "(1) a judicial district where any defendant

-29-

resides, if all defendants reside in the same State, (2) a judicial
district in which a substantial part of the events or omissions
giving rise to the claim occurred."   Because all of Calliope's
personnel are based in southern California, and because the
contract negotiations and technical work Calliope's employees
engaged in during the course of its dealings with plaintiffs all
occurred while those employees were in California, the court is
persuaded that this action could properly have been brought in the
Southern District of California under either 28 U.S.C. § 1391(a)(1)
or § 1391(a)(2).

**C.    The Private Interest Factors**

     The private interest factors that courts must consider
regarding the convenience of parties and witnesses are:  (1) the
relative ease of access to sources of proof; (2) the availability
of compulsory process to secure the attendance of witnesses;
(3) the cost of attendance for willing witnesses; and (4) all other
practical problems that make trial of a case easy, expeditious, and
inexpensive.   In re Volkswagen, 545 F.3d at 315.

     The first factor provides some support for a transfer.   At
issue in trial will be the representations made by Calliope during
the course of contract negotiations and the quality and quantity of
leads generated by Calliope during the mesothelioma and birth
injury campaigns.  The parties who can testify about these issues
on Calliope's behalf are all located in California.   The parties

-30-

who can testify about contract negotiations on plaintiffs' behalf, however, are primarily located in the Southern District of Texas because the contract negotiations for the plaintiffs were undertaken primarily, if not exclusively, by Kelly in Texas.  The parties who can testify about the quality and quantity of leads on plaintiffs' behalf are primarily located in New York because the processing and evaluation of leads occurred almost exclusively in Weiss's office in New York.  Weiss, however, has chosen along with Kelly to file suit in Texas, so the court cannot assume that Texas is an inconvenient venue for Weiss or his employees.  It does not appear that any physical evidence will be relevant in this action, and the electronic files that are relevant in this action can be transported to any venue with relative ease.  In summary, while the Southern District of California provides greater ease of access to Calliope's sources of proof, it will provide lesser ease of access to plaintiffs' sources of proof concerning contract negotiations, and may provide lesser access to plaintiffs' sources of proof regarding lead quality.  The court therefore concludes that the first factor provides limited support for the motion to transfer.

The other three private interest factors are likewise inconclusive.  Neither party has provided any evidence regarding the availability of compulsory process to secure the attendance of witnesses, so the court deems this factor to be neutral.  Regarding the cost of attendance for willing witnesses, while a venue in California would be less expensive for Calliope's witnesses, it

would be more expensive for the plaintiffs' witnesses based in
Texas and may be more expensive for witnesses based in Oklahoma,
Washington, D.C., and New York, since Texas is closer to those
locations than is California.  As to the fourth factor concerning
"all other practical problems," Calliope argues that transfer will
"avoid litigation in a District **foreign to five (5) out of six (6)
parties**."[33]  This argument is somewhat misleading, however.  Because
Calliope is the only active legal entity among the three named
defendants, there are actually only four parties of interest in
this action.  Since all four parties are located in different
cities, any venue would be foreign to at least three out of the
four parties in interest.  Because three of those four parties
chose venue in the Southern District of Texas, the court concludes
that this fourth factor provides limited support for denying
transfer.

D.   **The Public Interest Factors**

Courts consider the following public interest factors in
determining whether to grant a venue transfer: (1) the
administrative difficulties flowing from court congestion; (2) the
local interest in having localized interests decided at home;
(3) the familiarity of the forum with the law that will govern the
case; and (4) the avoidance of unnecessary problems of conflict of
laws and of the application of foreign law.

---

[33]Defendants' Motion, Docket Entry No. 9, p. 11.

The first factor is neutral because neither party has provided any evidence about court congestion in either venue. As to the second factor, Calliope argues that because its employees are all based in California and because "the majority of the Plaintiffs **are not Texas citizens**," the local interests favor venue in California.[34] This argument may prove too much, since it would favor transfer to a defendant's home territory in any situation in which a defendant in one state did business with citizens in multiple other states. While California has a local interest in resolving the contract disputes of its citizens, Texas has the same interest. The court deems this factor neutral. The impact of the third factor is inconclusive. Plaintiffs' petition, particularly regarding the TDTPA, is pleaded as if Texas law governs this dispute. Plaintiffs, however, have not presented clear evidence that Texas law controls, and Calliope has not argued that California law should control. The contracts in dispute have no choice of law clauses. Without deciding the issue, the court concludes in the absence of any argument to the contrary that Texas law probably controls, in which case the third factor offers some support for denying transfer, although the court has no doubt that a district court in California could competently apply Texas law. Finally, the court deems the fourth factor to be neutral because

---

[34] _Id._

neither party has presented any evidence that granting or denying transfer will result in conflict of law problems.

## E.    Conclusion

Considering the relevant private and public interest factors, the court concludes that Calliope has not met its burden of establishing that the Southern District of California is clearly more convenient than the Southern District of Texas.  Since none of the factors decisively supports transfer, the plaintiffs' choice of venue should be respected, and Calliope's motion to transfer will be denied.

## V.    <u>Motion to Dismiss for Failure to State a Claim</u>

Calliope argues that plaintiffs' fraud and breach of contract claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons explained below, the court will deny the motion but order the plaintiffs to replead their fraud claim.

## A.    Applicable Law

Rule 12 (b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  A court accepts the complaint's well-pleaded facts as true and views them in the light most favorable to the plaintiff.  <u>Johnson v. Johnson</u>, 385 F.3d 503, 529 (5th Cir. 2004). However, the Court "will not strain to find inferences favorable"

-34-

to the claimant.  <u>Dorsey v. Portfolio Equities, Inc.</u>, 540 F.3d 333,
338 (5th Cir. 2008) (quoting <u>Southland Sec. Corp. v. INSpire Ins.
Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir. 2004)).  Once a
claimant adequately states a claim, he may support this claim "by
showing any set of facts consistent with the allegations in the
complaint."  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1969
(2007).  The claimant's "obligation to provide the grounds of
entitlement to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action
will not do."  <u>Id.</u> at 1964-65 (internal quotation marks and
brackets omitted).

    1.  <u>Rule 9(b)</u>

Federal Rule of Civil Procedure 9(b) imposes a heightened
pleading standard for fraud claims.  Rule 9(b) requires that all
allegations of fraud state "with particularity the circumstances
constituting fraud or mistake.  Malice, intent, knowledge, and
other conditions of a person's mind may be alleged generally."
Fed. R. Civ. P. 9(b).  Failure to plead fraud with particularity
under Rule 9(b) is regarded as a failure to state a claim upon
which relief can be granted and is subject to dismissal under
Rule 12(b)(6).  <u>Lovelace v. Software Spectrum Inc.</u>, 78 F.3d 1015,
1017 (5th Cir. 1996).  Rule 9(b) is interpreted strictly to require
a claimant "pleading fraud to specify the statements contended to
be fraudulent, identify the speaker, state when and where the

statements were made, and explain why the statements were fraudulent." Herrmann Holdings Ltd. v. Lucent Tech. Inc., 302 F.3d 552, 564-65 (5th Cir. 2002) (internal quotation marks omitted). "Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994). "The plaintiffs must set forth specific facts supporting an inference of fraud." Id.; see also Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) ("The courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint also sets forth specific facts that makes it reasonable to believe that defendant knew that a statement was materially false or misleading."). Moreover, while a claimant may base its fraud claim on information and belief when facts "are peculiarly within the opposing party's knowledge, . . . this luxury 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)).

    2.   Fraud Claims Based on Nondisclosure

    To state a claim for common-law fraud based on nondisclosure Texas law requires the claimant to allege:   that the party concealed or failed to disclose a material fact that they knew the

-36-

claimant was ignorant of or did not have the opportunity to discover; that the concealing party intended to induce the claimant to take some action by concealing or failing to disclose the material fact; and that the claimant suffered as a result of acting on the nondisclosure. <u>Dorsey</u>, 540 F.3d at 341 (citing <u>Bradford v. Vento</u>, 48 S.W.3d 749, 754-55 (Tex. 2001)). However, "for there to be actionable nondisclosure fraud, there must be a duty to disclose." <u>Id.</u> (quoting <u>Newby v. Enron Corp.</u>, 388 F.Supp.2d 780, 788 (S.D. Tex. 2005) (citing Texas case law)). "A duty to disclose may arise where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue. . . ." <u>Id.</u> (internal quotation omitted).

**B.   Plaintiffs' Fraud Claim**

Calliope argues that plaintiffs' claims fail to meet the Rule 9(b) standard because they contain:

- No identification of who made the purported misrepresentations.

- No identification of to whom the purported misrepresentations were made;

- No assertion of any cognizable special relationship which is a mandatory element for fraud by concealment or fraud by non-disclosure as claimed by Plaintiffs.[35]

Plaintiffs respond that their petition alleges fraud with sufficient specificity.

---

[35]Defendants' Motion, Docket Entry No. 9, p. 8.

The Plaintiffs' Original Petition makes a number of allegations about what Calliope did or did not do:

25. Defendants had actual knowledge of its inability to fulfill its obligations and promises . . .

26. Defendants . . . had actual knowledge of their inability to provide the sufficient quantity and quality of leads to Plaintiffs that would generate signed clients with actionable cases. . .

27. Defendants intentionally omitted, concealed and/or suppressed this information from Plaintiffs, in order to induce Plaintiffs to enter into two binding contracts . . .

28. . . Defendants engaged in an aggressive strategy to lure Plaintiffs to pay Defendants money for Leads, which included the "An Attorney For You Proposal" that underlies the contract, which was full of representations, projections, and a Signed Case Guarantee, when it was known or should have been known by Defendants at the time of these representations that they were, in fact, false and misleading.

. . .

34. Despite repeated calls from Plaintiffs . . . the Defendants continued to falsely, recklessly, and intentionally misstate the truth about the Leads being generated by the Defendants.[36]

The court is not persuaded that plaintiffs' fraud complaint is sufficiently specific to satisfy the strict Rule 9(b) pleading standard.   To state an actionable fraud claim plaintiffs must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Herrmann, 302 F.3d at 564-65. Plaintiffs' fraud allegations fail to specify any specific speaker

---

[36]Plaintiffs' Original Petition, Docket Entry No. 2, pp. 8-10.

making a fraudulent statement or omission.  While the allegations make a general reference to the representations in the "An Attorney for You Proposal," which is attached to the Petition as Exhibit 1, the allegations do not specify which of the representations in the proposal it relied on, nor does it specify the time, place, and manner in which the representations in this proposal were presented to the plaintiffs.  Finally, the allegations claim that Calliope had knowledge of its inability to fulfill its obligations and of the falseness of its representations, but fail to provide specific facts that would make it reasonable to conclude that Calliope had such knowledge.  See Greenstone, 975 F.2d at 25.

In their allegations of fraud by non-disclosure, plaintiffs fail to establish that Calliope possessed a duty to disclose.  See Dorsey, 540 F.3d at 341.  Plaintiffs point to Texas state law holding that a duty to disclose information may arise in an arm's-length business transaction when a party makes a partial disclosure that, although true, conveys a false impression, citing Citizens National Bank v. Allen Rae Investments, Inc., 142 S.W.3d 459, 476-477 (Tex. App. -- Fort Worth, 2004).  The Citizens Bank case states:

> A duty to disclose may arise in a commercial context in four situations: 1) when there is a fiduciary relationship between the parties; 2) when one voluntarily discloses information, the whole truth must be disclosed; 3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; or 4) when one makes a partial disclosure and conveys a false impression.  Id.

-39-

Plaintiffs' petition provides no reason to conclude that a fiduciary relationship exists between the parties. While the petition does allege that Calliope made representations, it does not specify which representations were made that were later supplanted by new information that would have triggered a duty to disclose. Nor does the petition specify which disclosures made by Calliope were incomplete such that Calliope had a duty to provide further disclosures. Therefore, the court concludes that plaintiffs have not established that Calliope had a duty to disclose information that it breached through non-disclosure.

The court concludes that plaintiffs' fraud allegations are insufficiently specific to meet the Rule 9(b) standard. Failure to plead fraud with particularity under Rule 9(b) is grounds for dismissal under Rule 12(b)(6). <u>Lovelace</u>, 78 F.3d at 1017. Rather than dismissing the claim, however, the court will order plaintiffs to replead their fraud allegations within thirty days of the issuance of this opinion.

## C.  Calliope's Motion to Dismiss Breach of Contract Claims

Calliope also moves to dismiss plaintiffs' breach of contract claims under Rule 12(b)(6). Calliope argues that it is entitled to dismissal of plaintiffs' breach of contract claims regarding the birth injury agreement because plaintiffs breached that agreement by failing to complete their payments due under it.[37] Calliope

---

[37]Defendants' Motion, Docket Entry No. 9, p. 8.

further argues that plaintiffs' breach of contract claims regarding the mesothelioma agreement should also be dismissed because Calliope actually fulfilled its obligations under that contract.[38] These arguments, however, are breach of contract defenses and are not relevant to a Rule 12(b)(6) motion, which deals solely with whether or not the plaintiffs have stated a claim upon which relief can be granted.  Plaintiffs have stated adequate breach of contract claims.  Therefore, Calliope's Rule 12(b)(6) motion to dismiss the breach of contract claims will be denied.

## VI.  Conclusion and Order

For the reasons stated above, Defendants' Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California (Docket Entry No. 9) is **DENIED**.  Because plaintiffs' fraud allegations are insufficient under Federal Rule of Civil Procedure 9(b), plaintiffs are **ORDERED** to amend their petition within thirty (30) days from the entry of this Memorandum Opinion and Order.

**SIGNED** at Houston, Texas, on this 16th day of December, 2009.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[38]Id.

-41-